In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1312

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN MANUEL LARIOS-BUENTELLO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 13-cr-158-wmc — **William M. Conley**, *Chief Judge.*

ARGUED NOVEMBER 17, 2015 — DECIDED NOVEMBER 23, 2015

Before FLAUM, EASTERBROOK, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Juan Larios-Buentello has been removed from the United States frequently in light of his long criminal record (14 convictions in Florida alone). He repeatedly returns and has been convicted three times of illegal reentry, which violates 8 U.S.C. §1326(a). The conviction now under review arose when Wisconsin turned him over to immigration officials after he had been caught flee-

ing the scene of an auto accident. The district judge sentenced him to 36 months' imprisonment. Larios-Buentello maintains that the district judge wrongly rejected his defense under §1326(d). (After the judge rejected the defense, Larios-Buentello entered a conditional guilty plea, preserving appellate review of this issue.)

Subsection 1326(d) permits an alien to defeat a prosecution for illegal reentry by showing that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings … improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." An immigration judge ordered Larios-Buentello removed in 1998. (All later removals have been based on that order.) He contends that this removal was "fundamentally unfair" because the IJ did not advise him that he would be eligible to seek discretionary relief from removal under §212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. §1182(c).

The IJ did not tell him this because §212(c) had been repealed in 1996 by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) (Sept. 30, 1996), and the Department of Justice had taken the position that the repealer applies to aliens whose convictions predate the IIRIRA's effectiveness in April 1997. The Supreme Court disagreed with that position in 2001, as applied to aliens who pleaded guilty to felonies before the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) (April 24, 1996), which made §212(c) unavailable to aliens whose convictions led to sentences exceeding five years' imprisonment. See *INS v. St. Cyr*, 533 U.S. 289 (2001). The Justices observed that the

AEDPA's changes were not expressly retroactive, while the IIRIRA declared full retroactivity. *St. Cyr* therefore thought that pre-AEDPA guilty pleas were not good reasons to eliminate §212(c) opportunities, for defendants' willingness to admit guilt might have been influenced by the fact that before April 24, 1996, no felony conviction (even one for an "aggravated" felony) inevitably led to removal.

The district court held that Larios-Buentello had not established a defense under §1326(d)—that, indeed, none of the three paragraphs of subsection (d) had been met, and every circuit that has considered the issue has held that an alien must meet all three. See, e.g., *United States v. Soto-Mateo*, 799 F.3d 117, 120 (1st Cir. 2015); *United States v. Torres*, 383 F.3d 92, 98–99 (3d Cir. 2004). Larios-Buentello had not appealed the IJ's removal order to the Board of Immigration Appeals and thus had not satisfied paragraph (d)(1); he had not been deprived of the opportunity for judicial review and thus had not satisfied paragraph (d)(2); and it is not "fundamentally unfair" to refrain from advising an administrative litigant of an opportunity to seek relief that the agency sincerely believes to be unavailable. No one is entitled to have an adverse litigant announce the opposite of its actual legal position. See *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1019–20 (7th Cir. 2006) (aliens do not have a constitutional right to be notified even of those discretionary remedies that the agency believes to be available); see also, e.g., *Soto-Mateo*, 799 F.3d at 123.

The second and third points follow directly from *United States v. Zambrano-Reyes*, 724 F.3d 761 (7th Cir. 2013), which rejected a §1326(d) defense by someone who, like Larios-Buentello, was subject to a removal order entered before *St.*

*Cyr*. Larios-Buentello tries to distinguish *Zambrano-Reyes* on the ground that he waived counsel during his removal proceedings, but that decision's reasoning does not depend on whether the alien retained counsel. What is more, Larios-Buentello unquestionably fails to satisfy paragraph (d)(1). He did not appeal to the BIA, which also prevented a request for judicial review. He offers an excuse for the failure to exhaust administrative remedies—he maintains that someone told him that an appeal would be futile—but the statute requires exhaustion, not excuses.

The order of removal recites that he was told that he was entitled to appeal and chose not to do so; he does not contend that this recital is false. So an administrative appeal was available, even if unlikely to succeed. A litigant's unilateral belief that an appeal would fail does not make the opportunity "unavailable" or excuse failure to use the procedure. See, e.g., *Bousley v. United States*, 523 U.S. 614, 622–23 (1998). If the BIA had decided adversely to Larios-Buentello, he could have sought judicial relief, with a reasonable prospect of success. Before *St. Cyr* five courts of appeals had anticipated its holding. See 533 U.S. at 293 n.1. The *St. Cyr* decision might have been the *Zambrano-Reyes* decision, or the *Larios-Buentello* decision, had either alien pursued his administrative and judicial remedies. See *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003).

"Might have been" is a potentially important qualifier, because it is unlikely that Larios-Buentello could have received any benefit from the doctrine of *St. Cyr* even had he used all administrative and judicial remedies. St. Cyr's felony conviction was entered in March 1996, a month before the AEDPA became law; Zambrano-Reyes's conviction dates to

1993. But Larios-Buentello pleaded guilty in March 1997 to three felonies (burglary, grand theft, and resisting a police officer). He entered these pleas after both the AEDPA and the IIRIRA were on the books, and he received concurrent one-year sentences. (Larios-Buentello has many earlier convictions too, but we need not discuss them.)

Not until the IIRIRA took effect at the beginning of April 1997 was the qualification for an "aggravated" felony lowered to one year in prison and removal made mandatory by the repeal of §212(c). (The opinions in *St. Cyr* and *Zivkovic v. Holder*, 724 F.3d 894 (7th Cir. 2013), recount many of the statutory changes and make it unnecessary for us to provide a citation for each development.) But the fact that by March 1997 §212(c) had already been repealed in language that declared full retroactivity for removal proceedings commencing the next month would have made it folly for a person in Larios-Buentello's position to plead guilty in reliance on an option to seek §212(c) relief that was about to expire. Larios-Buentello's removal proceeding did not begin until 1998, and he does not say that he thought that he would be placed in removal proceedings immediately on pleading guilty.

Larios-Buentello is therefore less well situated than was Zambrano-Reyes to assert a defense under §1326(d). The district court did not err in entering a conviction.

AFFIRMED